IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:07-CR-41-D
No. 7:09-CV-126-D
No. 7:14-CV-81-D
No. 7:16-CV-145-D

| | | |
|---|---|---|
| ELSON PRESSLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On June 13, 2016, Elson Pressley ("Pressley") moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 246-month sentence [D.E. 60] and requested appointment of counsel [D.E. 61]. On October 28, 2016, the Federal Public Defender entered an appearance to represent Pressley [D.E. 66], thereby mooting his request for counsel. On January 3, 2017, the government moved to dismiss Pressley's section 2255 motion [D.E. 68] and filed a memorandum in support [D.E. 69]. On January 24, 2017, Pressley responded in opposition [D.E. 70]. On July 25, 2017, the court ordered the government to produce all Shepard-approved documents concerning the 1984 housebreaking convictions listed in paragraphs 7, 8, and 9 of Pressley's Presentence Investigation Report ("PSR") [D.E. 72]. See Shepard v. United States, 544 U.S. 13, 26 (2005). On July 31, 2017, the government produced the Shepard-approved documents [D.E. 75]. On August 4, 2017, the government filed a supplemental brief [D.E. 76]. As explained below, the court grants the government's motion to dismiss and dismisses Pressley's section 2255 motion.

I.

On June 18, 2007, Pressley pleaded guilty to being a felon in possession of a firearm and ammunition. See [D.E. 29] 2–20. On September 25, 2007, at Pressley's sentencing hearing, the court calculated Pressley's total offense level to be 33, his criminal history category to be VI, and his advisory guideline range to be 235 to 293 months' imprisonment. See Sentencing Tr. [D.E. 30] 4–8. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Pressley to 246 months' imprisonment and 5 years of supervised release. See id. at 16–21.

Pressley appealed. On May 2, 2008, the United States Court of Appeals for the Fourth Circuit concluded that Pressley was an armed career criminal and affirmed Pressley's sentence. See United States v. Pressley, 276 F. App'x 271 (4th Cir. 2008) (per curiam) (unpublished).

On December 23, 2009, this court dismissed Pressley's first section 2255 motion for failure to state a claim upon which relief can be granted. See [D.E. 43]. On June 27, 2014, this court dismissed Pressley's second 2255 motion as successive. See [D.E. 48].

On June 2, 2016, the United States Court of Appeals for the Fourth Circuit authorized Pressley to file a successive 2255 motion in light of Johnson v. United States, 135 S. Ct. 2551 (2015), and Welch v. United States, 136 S. Ct. 1257 (2016). On June 13, 2016, Pressley filed his section 2255 motion [D.E. 60] and argues that, due to Johnson, he is no longer an armed career criminal under the Armed Career Criminal Act ("ACCA") and his statutory maximum sentence is 120 months' imprisonment. See [D.E. 60] 5–6, 12; 18 U.S.C. § 924(e). The government disagrees and moves to dismiss Pressley's motion. See [D.E. 68, 69].

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a claim's legal and factual sufficiency. Fed.

2

R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 320 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). The government may challenge the legal sufficiency of a section 2255 petition through a motion to dismiss under Rule 12(b)(6). See Rule 12, Rules Governing Section 2255 Proceedings; United States v. Frady, 456 U.S. 152, 166–68 n.15 (1982); United States v. Reckmeyer, 900 F.2d 257, at *4 (4th Cir. 1990) (unpublished table decision). In considering a motion to dismiss, a court need not accept a pleading's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

III.

Pressley argues that he is not an armed career criminal under the ACCA. Specifically, he argues that his three 1984 South Carolina housebreaking convictions and his 1992 South Carolina second-degree burglary conviction do not qualify as violent felonies under the ACCA. See PSR ¶¶ 7–9, 13. The government concedes that Pressley's 1992 second-degree burglary conviction is not a "violent felony" under the ACCA, but argues that Pressley's three 1984 convictions for housebreaking are violent felonies under the ACCA. See [D.E. 76] 2–4.

3

A.

A person convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) is ordinarily subject to a maximum of 10 years' imprisonment. 18 U.S.C. § 924(a)(2). Under the ACCA, however, a person who has previously been convicted of three or more convictions that are "serious drug offense[s]" or "violent felon[ies]" committed on separate occasions shall be punished by a minimum of 15 years' imprisonment and up to a maximum of life imprisonment. Id. § 924(e). Before Johnson, a crime could qualify as a "violent felony" in three ways. First, the conviction could fall within the "force clause" by having "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); see Johnson, 135 S.Ct. at 2551. Second, the conviction could be one of the enumerated offenses by fitting the generic definition of "burglary, arson, or extortion." Id. § 924(e)(2)(B)(ii). Finally, the conviction could fall under the so-called "residual clause" if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. In Johnson, the Court invalidated the residual clause. See Johnson, 135 S. Ct. at 2557. Thus, to qualify as a "violent felony" under the ACCA, a conviction must either fall within the force clause or fit the generic definition of an enumerated offense. See id. at 2563. The government contends that Pressley's three 1984 housebreaking convictions remain violent felonies under the ACCA because they qualify as generic burglary.

To determine whether a prior conviction qualifies as an enumerated violent felony under the ACCA, a court uses the categorical approach to determine "whether the elements of the crime of conviction sufficiently match the elements of the listed generic crime, while ignoring the particular facts of the case." United States v. White, 836 F.3d 437, 444 (4th Cir. 2016) (quotation and alterations omitted); see Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). If the elements of

4

the crime of conviction are the same as, or narrower than, the generic definition of an enumerated offense in the ACCA, a conviction for the state offense qualifies as a conviction for a crime of violence. See White, 836 F.3d at 444–45. "But if the [state] statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). "The key . . . is elements, not facts." See id. In construing a state statute, a federal court may not interpret the state statute differently than the state's highest court. See Johnson v. Fankell, 520 U.S. 911, 916 (1997); White, 836 F.3d at 446. If a state's highest court has not ruled on an issue, a federal court looks to the decisions of a state's intermediate appellate court. See United States v. Winston, 850 F.3d 677, 684 (4th Cir. 2017). In reviewing the statute of conviction in question, the court consults the law that applied at the time of conviction for that offense. See McNeill v. United States, 563 U.S. 816, 820–22 (2011); Rivera v. United States, 716 F.3d 685, 688 (2d Cir. 2013).

B.

A defendant's conviction qualifies as a burglary conviction under section 924(e)(2)(B)(ii) if "regardless of its exact definition or label [it] ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990); see White, 836 F.3d at 445. The generic definition of burglary is broader than the common-law definition of burglary and includes, inter alia, "offenses committed in the daytime." Taylor, 495 U.S. at 593. This case focuses on generic burglary's "building or other structure" element, which "does not encompass every enclosure." White, 836 F.3d at 445. An offense is not a burglary if it may be committed in "places, such as automobiles and vending machines, other than buildings." Taylor, 495 U.S. at 598–99; see Mathis, 136 S. Ct. at 2250; White,

5

836 F.3d at 445; United States v. Henriquez, 757 F.3d 144, 150 (4th Cir. 2014). In Shepard, the Court noted that generic burglary must be "committed in a building or enclosed space . . . not in a boat or motor vehicle." 544 U.S. at 15–16; accord White, 836 F.3d at 445. A generic burglary cannot be committed in the curtilage of a dwelling. See James v. United States, 550 U.S. 192, 212 (2007), overruled on other grounds by Johnson v. United States, 135 S. Ct. 2551 (2015).

In 1985, South Carolina repealed the portion of S.C. Code § 16-11-320 containing the offense of housebreaking. See An Act to Amend Section 16-11-310, Code of Laws of South Carolina, 1976, Relating to Burglary, 1985, S.C. Acts 159 (1985) (codified at S.C. Code. §§ 16-11-310 et. seq.); compare S.C. Code § 16-11-320 (1983), with S.C. Code §§ 16-11-310 et. seq. When the offense existed, the code defined the offense of housebreaking as follows:

> (1) Every person who shall break and enter or who shall break with intent to enter, in the daytime, any dwelling house with intent to commit a felony or other crime of a lesser grade, shall be deemed guilty of a felony and upon conviction shall be punished at the discretion of the court by imprisonment for a term not exceeding ten years.
>
> (2) Every person who shall break and enter or who shall break with intent to enter, in the daytime, any house other than a dwelling house or who shall break and enter or shall break with intent to enter, in the nighttime, any house, the breaking and entering of which would not constitute burglary, with intent to commit a felony or other crime of a lesser grade, shall be deemed guilty of a felony and upon conviction shall be punished at the discretion of the court by imprisonment for a term not exceeding five years.

S.C. Code. § 16-11-320 (1983); see State v. Dunbar, 282 S.C. 169, 170, 282 S.E.2d 16, 17 (1984). Thus, the Code prohibited two types of housebreaking: one involving a "dwelling house," punishable by up to ten years' imprisonment, and one involving "any house other than a dwelling house," punishable by up to five years' imprisonment. See S.C. Code § 16-11-320 (1983).

In 1984, at the time of Pressley's three housebreaking convictions, the Code defined "dwelling house" as "any house, outhouse, apartment, building, erection, shed or box in which there

6

sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property," and "all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance." S.C. Code § 16-11-10 (1983); see Padgett v. State, 324 S.C. 22, 29 n.2, 484 S.E.2d 101, 104 n.2 (1997). In 1984, the Code did not define the term "any house other than a dwelling house." S.C. Code § 16-11-320 (1983). The scope of places that South Carolina's housebreaking statute covered in 1984 is narrower than the scope of places that South Carolina's burglary statute covered in 1984, which includes "any structure, vehicle, watercraft, or aircraft" and which the Fourth Circuit has held reaches farther than generic burglary. See United States v. McLeod, 808 F.3d 972, 976 (4th Cir. 2015) (quotation omitted) (holding that five 1998 convictions in South Carolina for second-degree burglary do not qualify as violent felonies because "dwelling" in S.C. Code § 16-11-310 was defined to include "the living quarters of a building which is used or normally used for sleeping" and "any structure, vehicle, watercraft, or aircraft.").

## C.

Pressley's three 1984 housebreaking convictions require two separate inquires under the categorical approach. When Pressley was convicted, the housebreaking statute contained two distinct types of housebreaking—one committed in a "dwelling house" and one committed in "any house other than a dwelling house." If the statute "consists of 'multiple, alternative elements' creating 'several different crimes,'" some of which would match the generic federal offense and others that would not, the modified categorical approach applies. Omargharib v. Holder, 775 F.3d 192, 197 (4th Cir. 2014) (quoting Descamps, 133 S. Ct. at 2285). If the modified approach applies, the court can scrutinize a limited set of documents to determine which crime the defendant was convicted of committing. See Descamps, 133 S. Ct. at 2283–84; Omargharib, 775 F.3d at 197–98.

The documents are called "Shepard documents" and "derive their name from the Supreme Court's decision in Shepard v. United States, 544 U.S. 13, 16 (2005)." Omargharib, 775 F.3d at 198 n.10. "Relevant Shepard documents include the charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." Id. (quotation omitted). Thus, the court initially determines whether both means of violating the housebreaking statute categorically qualify as the generic offense of burglary. If they do, resort to the modified categorical approach is not required. See United States v. Webster, 636 F.3d 916, 920 (8th Cir. 2011) ("Because the statute does not embrace any conduct that does not qualify as a violent felony, there is no need to determine which portion of the statute was the basis for conviction. Shepard's modified categorical approach, and its attendant evidentiary limitations, are not relevant to this sentencing analysis.").

1.

Pressley argues that South Carolina's 1984 definition of "dwelling house" is broader than the definition of a building in the generic definition of burglary because "dwelling house" includes a building's curtilage. See [D.E. 70] 4–5. The 1984 definition of "dwelling house" includes "all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance." S.C. Code § 16-11-10 (1983). However, entering the building or structure's curtilage was not sufficient in 1984, by itself, to sustain a conviction for housebreaking. Instead, in 1984, housebreaking required breaking into one of the defined buildings or structures. See Dunbar, 282 S.C. at 170, 282 S.E.2d at 17. Thus, the court rejects Pressley's curtiledge argument.

Pressley also argues that engaging in the acts of generic burglary within "conveyances" takes an offense beyond the generic definition of burglary. See James, 550 U.S. at 212 n.7 ("Burglary

8

under Florida law differs from 'generic' burglary in a second respect: It extends not just to entries of structures, but also of 'conveyances.'" (alteration omitted)). In James, the Court made this statement in reference to a Florida statute that included "conveyances" as locations in which one could commit burglary. See id. (citing Fla. Stat. § 810.02(1)). The Florida statute defined "conveyance" as "any motor vehicle, ship, vessel, railroad vehicle or car, trailer, aircraft, or sleeping car." Fla. Stat. § 810.011(3). Although a different section of the current South Carolina criminal code defines "building"—a word used in the definition of "dwelling house"—as encompassing "any structure, vehicle, watercraft, or aircraft" where a person lives, regularly carries out an activity, or stores goods, that definition applies only to burglary statutes and not the housebreaking statute, and was not in force when Pressley was convicted of housebreaking in 1984. See S.C. Code § 16-11-310 (2016). Pressley has cited no South Carolina precedent in force at the time of his 1984 convictions that defined "dwelling house" for purposes of the housebreaking statute as encompassing enclosures akin to the "conveyances" referenced in James.

Finally, although the Supreme Court of South Carolina has interpreted the statute defining "dwelling house" as encompassing mobile homes and boats in the context of burglary and arson, the Supreme Court of South Carolina issued those decisions in 1988 and 1993. See State v. Myers, 313 S.C. 391, 393, 438 S.E.2d 236, 237 (1993) (arson of a boat); State v. Glenn, 297 S.C. 29, 30–32, 374 S.E.2d 671, 671–72 (1988) (burglary of a mobile home). Pressley offers no support for concluding that the Supreme Court of South Carolina similarly construed "dwelling house" at the time of his 1984 convictions for housebreaking or at any time before the 1985 repeal of the offense of housebreaking.

Unlike the statutes typically held to contain location elements broader than those of generic burglary, the statute defining "dwelling house" for purposes of South Carolina housebreaking did

9

not by its express terms allow people to commit that offense in enclosures not within the generic definition of burglary. Likewise, South Carolina's courts did not interpret "dwelling house" in the housebreaking statute to extend to non-generic areas. Thus, for purposes of Pressley's 1984 housebreaking convictions, South Carolina's form of housebreaking involving a "dwelling house" qualifies as a "burglary" under section 924(e)(2)(B)(ii).[1]

2.

South Carolina's form of housebreaking involving "any house other than a dwelling house" also matches the generic offense of burglary. Unlike "dwelling house," South Carolina did not define "any house." The code's definition of "dwelling house," however, sheds some light. The code defined a "dwelling house" as "any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer, or person who lodges there with a view to the protection of the property," as well as "all houses, outhouses, buildings, sheds and erections which are within two hundred yards of" of a dwelling house. S.C. Code § 16-11-10 (1983). Thus, "[a]ny house other than a dwelling house" includes the same "any house" structure included in the definition of "dwelling house," but dispenses with the requirement that someone "lodge[] there with a view to the protection of the property." Dropping the lodging requirement does not push this form of housebreaking beyond the bounds of generic burglary. As with the "dwelling house" version of housebreaking, the "any house" version is limited to a specific subset of structures fitting the generic offense of burglary. See Shepard, 544 U.S. at 15–16.

---

[1] Pressley does not argue that his South Carolina housebreaking convictions were not committed on separate occasions. Two of Pressley's South Carolina housebreaking convictions were for crimes committed on December 14, 1983. See PSR ¶¶ 8–9. The crimes occurred at different locations, and had different victims. See United States v. Span, 789 F.3d 320, 327–28 (4th Cir. 2015).

10

3.

On September 25, 2007, Pressley's three 1984 convictions for housebreaking qualified as violent felonies. Thus, this court appropriately sentenced Pressley as an armed career criminal. Accordingly, the court denies Pressley's motion to vacate his sentence.

After reviewing the claim presented in Pressley' motion, the court finds that reasonable jurists would not find the court's treatment of Pressley's claim debatable or wrong and that the claim deserves no encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IV.

In sum, the court GRANTS the government's motion to dismiss [D.E. 68], DISMISSES Pressley's section 2255 motion [D.E. 60], DENIES as moot Pressley's motion to appoint counsel [D.E. 61], and DENIES a certificate of appealability.

SO ORDERED. This 11 day of January 2018.

JAMES C. DEVER III
Chief United States District Judge